IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ALBERTO OVALLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:18-CV-211-Z |
| | § | |
| UNITED RENTALS | § | |
| (NORTH AMERICA), INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (ECF No. 95.) Having considered the Motion, Response, Reply, and applicable law, the Court **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's case in its entirety.[1]

**BACKGROUND**

The allegations in this slip-and-fall case are straightforward. In May 2016, Plaintiff Alberto Ovalle, a mechanic with twenty-five years of experience, was hired to work as a field service technician by Defendant United Rentals at its facility located in Canyon, Texas. Pl.'s Depo., 31:16–31:20, 93:1–93:7, 93:17–94:19. The facility was owned and operated by Defendant. *Id.* Plaintiff was assigned to work in the "power division" part of the branch. *Id.* at 31:11–32:12.

Plaintiff was provided two work bays to complete his duties and store his equipment. These work bays were located on the southwest corner of the building — the backside of the facility. During the ten months Plaintiff was employed at United Rentals, he was the only mechanic to work in these bays. *Id.* at 56:5–56:23. Plaintiff's sole co-worker Art Silva worked from an office located on the northwest corner of the building— the frontside of the facility. *Id.* at 36:2–36:17.

---

[1] The parties' motions in limine, ECF Nos. 82 and 84, are **DENIED** as moot.

Two doors provided access to Plaintiff's work bays: (1) the main "front door" on the northwest corner, near the office; (2) the rear "side door" on the southwest corner, near the bays.

Using the former, Plaintiff entered the main "front door," walked through a small hallway, then crossed through the pump division to a doorway that entered Plaintiff's work bay. *Id.* at 36:18–38:24. The lone light switch for Plaintiff's work bay was located by this door. *Id.* The image below depicts the view of the light switch from a vantage point inside Plaintiff's work bay (*i.e.*, the pump division bay is through the doorway). ECF No. 97 at 51.



Using the latter, Plaintiff entered the rear "side door," which opened directly into the work bay area. The image below depicts the interior view of the side door. ECF No. 97 at 32. This entrance had no light switch. Thus, a person entering through the side door must walk along the yellow line to access the lone light switch — or otherwise navigate through the bay. Pl.'s Depo., 171:22–177:13.



The image below depicts the respective locations of the (1) main "front door," (2) rear "side door," and (3) work bays. ECF No. 97 at 11.



Main "Front Door"    Rear "Side Door"    Work Bays (Sectional Garage doors)

In the work bays, Plaintiff had access to a squeegee to push water and other substances out of the bay, as well as a product called "Floor-Dry," slip resistant boots, and a mop and bucket to clean up any spills. Silva's Depo., 34:2-34:11, 62:3-62:14; Pl.'s Depo., 146:13-147:25. During his employment, Plaintiff had twice successfully squeegeed water out of his work bays. Pl.'s Depo., 151:5-151:15, 153:3-154:21. Both times, Plaintiff reported the presence of water to Mr. Silva because Plaintiff believed water was seeping under the sectional garage doors on the southern wall of the work bays. *Id.* at 151:10–152:8. The work bay floors feature painted concrete and the parties agree that a painted surface becomes slippery when wet. Karabanoff's Depo., 144:8–144:23.

Mr. Silva was the operations manager of the facility. *Id.* at 163:11–16; Karabanoff's Depo., 11:2–12:2. Mr. Silva was also Plaintiff's direct supervisor because there was no branch manager at the time of the incident. *Id.* at 14:10–14:12; 10:20–11:22. However, Mr. Silva testified that Plaintiff was tantamount to a co-worker. Silva's Depo., 27:16–28:19. Instead, Mr. Silva testified that district manager Carlos Ortegon was the actual supervisor of both Plaintiff and Mr. Silva. *Id.* at 27:14–28:6.

On March 28, 2017, it was raining at the United Rentals facility in Canyon, Texas. Pl.'s Depo., 77:12–85:24; 150:10-20. That morning, Plaintiff entered his work bay through the side door and closed the door behind him. *Id.*; 156:6–156:20. It was dark inside because the lights were turned off and the work bays had no windows. *Id.* Additionally, Plaintiff was unable to walk along the yellow line because there was equipment obstructing the path. *Id.* 181:1 – 184:3. Instead, Plaintiff took about nine steps forward in the dark to go around the equipment. *Id.* At that point, Plaintiff allegedly slipped on water that had entered the work bay under the sectional garage doors. *Id.* 156:6–157:17. Plaintiff then proceeded to turn on the lights and squeegee the water out of the work bay when he felt a sharp pain in his knee and fell down again from the pain. *Id.*

Plaintiff now brings this lawsuit against United Rentals. Plaintiff alleges negligence and premises-liability theories for his fall and seeks personal injury damages. ECF No. 8. Defendant now moves for summary judgment on all of Plaintiff's claims.

### LEGAL STANDARDS

This is a diversity case. Accordingly, Texas substantive law governs. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Summary Judgment Standard

In a civil case, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." FED. R. CIV. PROC. 56(b). When a summary judgment movant does not have the burden of proof on a claim, it may obtain summary judgment by pointing the Court to the absence of evidence on any essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts

demonstrating that there is a genuine issue of material fact for trial. *Id.* at 324–25; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To meet this burden, the nonmovant must show more than "some metaphysical doubt as to the material facts" — and may not rely on "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Id.* at 1075 (internal marks omitted). However, summary judgment evidence is to be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1994).

### B. Application of Texas Worker's Compensation Act

It is undisputed that United Rentals did not have workers' compensation insurance coverage at the time Ovalle was injured. This absence of coverage triggers certain portions of the TWCA:

> [The TWCA] was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment . . . . The act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on-the-job . . . . In exchange for this prompt recovery, the act prohibits an employee from seeking common- law remedies from his employer, as well as his employer's agents, servants, and employees, for personal injuries sustained in the course and scope of his employment.

*Odom v. Kroger Tex. L.P.*, No. 3:13–CV–579, 2014 WL 585329, at \*2 (quoting *Austin v. Kroger Tex. L.P.*, 731 F.3d 418, 423 (5th Cir. 2013)). Employers may opt-out of the workers' compensation program. *See* TEX. LAB. CODE § 406.002. Other courts in this District have previously explained the nature of an employer's options under the TWCA:

When they opt-out, they are considered a 'non-subscribing employer,' and they forgo certain benefits provided by the TWCA. In particular, the TWCA vests employees of non-subscribing employers with the right to sue their employers for work-related injuries, and the TWCA *deprives the non-subscribing employer of the traditional common law defenses of contributory negligence, assumption of risk, and the fellow-servant rule*.

*Odom*, 2014 WL 585329, at *2 (emphasis added).

Despite this "waiver" of defenses, the Texas Supreme recently clarified that a nonsubscribing employer generally owes no duty to warn employees of dangers that are commonly known, open and obvious, or already appreciated by the employee. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203, 210–11 (Tex. 2015). This is because it is the "Court's role to determine when a party owes a legal duty to begin with." *Id.* at 212. The TWCA only addresses an employer's available defenses. It does not disturb the Court's role to determine the existence of a duty in the first place.

### C. Premises-Liability vs. Ordinary "Safe Workplace" Negligence

Other courts have previously described the three "species" of negligence claims that an employee injured at work may assert against an employer. *Odom*, 2014 WL 585329, at *3. This case involves two of those three types of claims—the "premises-liability" type claim and the "safe-workplace" type claim.

The Fifth Circuit has held that these types of claims are "conceptually distinct." *Austin*, 746 F.3d at 196. And Texas courts do not allow plaintiffs to pursue both types of claims simultaneously for the same injury. *Id.* at 197. Accordingly, the Court must identify each type of claim Plaintiff is bringing in this case and separate them to conduct the proper analysis.

A recent Texas case, *Advance Tire & Wheels, LLC v. Enshikar*, explains the difference between the two types of claims:

Just as landowners owe a premises-liability duty to invitees on their premises, employers have a duty to provide their employees with a reasonably safe workplace. But employers' duties to their employees in this regard are broader than their premises-liability duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the employer is, or reasonably should be, aware but the employee is not. The additional responsibilities of an employer to its employees include "a duty to provide necessary equipment, training, or supervision." Advance Tire argues that Enshikar's expertise or knowledge about repairing tires negated its premises-liability duty to warn him about a danger of which he already was aware, but that argument does not foreclose an employer's duty to provide necessary instrumentalities to safely perform the work.

*Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 480 (Tex.App.—Houston [1st Dist.] 2017, no pet.) (citing *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 201–02 (Tex. 2015); *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008)).

Here, Plaintiff brings the following contentions against Defendant:

a. Not furnishing a reasonably safe place to work;

b. Not ensuring that the bay door was kept in a state where it would not allow rainwater to seep underneath the door;

c. Not repairing the bay door after being told it was allowing water to seep underneath the bay door;

d. Using a painted concrete floor that was not slip resistant;

e. Not providing a clear supervisor;

f. Not providing adequate lighting for entry ways that were being utilized;

g. Failing to furnish reasonably safe instrumentalities with which to work;

h. Failing to provide or enforce safety policies and regulations regarding safe, adequate lighting and preventing slips from liquids on the floor;

i. Failing to reasonably inspect the premises for concealed, unreasonably dangerous conditions and failing to warn of or make safe such conditions; and

j. Failing to keep the premises in a reasonably safe conditions.

ECF No. 81 (Joint Proposed Jury Charge), at 8.

The Court finds Plaintiff's contentions (b), (c), (d), (f), (i), and (j) are best considered as premises-liability claims because Plaintiff's "injuries are properly conceived as resulting from a condition on the premises rather than an ongoing activity." *Austin*, 746 F.3d at 196.

On the other hand, Plaintiff's contentions (a), (e), (g), and (h) are properly rooted in United Rentals' continuous, non-delegable duties as an employer. With this framework in mind, the Court proceeds to analyze Plaintiff's claims under the familiar summary-judgment standard.

**ANALYSIS**

As stated above, whether a duty exists in a negligence case is a question of law for the court to decide from the facts surrounding the occurrence in question. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 331 (5th Cir. 2017) (citing *Military Highway Water Supply Corp. v. Morin*, 156 S.W.3d 569, 572 (Tex. 2005)).

**A. Plaintiff's Premises Liability Claims – Contentions (b), (c), (d), (f), (i), and (j)**

*1. Plaintiff had knowledge of the dangerous conditions.*

An employer has the same premises-liability duty to its employees as other landowners have to invitees on their premises. *Austin*, 465 S.W.3d at 201–02. Specifically, an employer has a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the employer is or reasonably should be aware, but the employee is not. *See id.* (internal citations omitted).

In other words, under the general rule announced in *Austin*, employers have *no* premises-liability duty to protect or warn an employee against unreasonably dangerous conditions that are open and obvious or *otherwise known to the employee*. *Id.* (emphasis added).[2]

---

[2] Plaintiff does not appear to grasp the holding of the Supreme Court of Texas in *Austin*. Plaintiff repeatedly argues that Defendant has a "duty to warn Plaintiff of hazards that were commonly known (*i.e.*, open and obvious) and already appreciated by Plaintiff." *See, e.g.*, Pl.'s Resp. at 11. But that is exactly the opposite of what the Texas Supreme Court said. *Austin*, 465 S.W.3d at 201–02, 204 ("[A]n employer has the same premises-liability duty to its employees as

Here, the record conclusively establishes Plaintiff knew of the dangerous conditions present. During his ten months of employment at the facility, Plaintiff had twice squeegeed water out of the work bay after it seeped under the bay doors after heavy rains. Pl.'s Depo, 149:4–151:15; 153:1–154:3. Both times, Plaintiff reported the incident to Mr. Silva. *Id.* at 151:10–152:8.

Importantly, Plaintiff was the *only* employee of United Rentals who worked in the bays of the Canyon facility. *Id.* at 56:15–57:8. This fact has important consequences for Plaintiff's argument.

Because Plaintiff was the only employee who was responsible for working in and cleaning the work bays, his knowledge of the dangerous conditions is *identical* and *coextensive* with United Rentals' knowledge. United Rentals *could not* know more about the conditions in the work bays because Plaintiff was the employee responsible for maintaining them and reporting any problems to management.

But Plaintiff repeatedly argues that Defendant knew of the dangerous conditions. *See, e.g.*, Pl.'s Resp. at 5 ("Defendant knew about all of these [dangerous conditions] because Plaintiff had notified Defendant about similar hazards twice before."). But, at the same time, Plaintiff argues *he* did not know of the dangerous conditions. *Id.* This is simply a logical impossibility. According to Plaintiff's own arguments, Defendant knew about the dangerous conditions *because he warned Defendant*. Plaintiff could only warn of the conditions if he himself knew about them.

In other words, if Plaintiff, as the sole employee in the work bays, did not know about the dangerous conditions, then Defendant could not have known about the dangerous conditions. And vice versa. But there is no logical way to conclude that Plaintiff did not know about the dangerous conditions while Defendant did.

---

other landowners have to invitees on their premises . . . [and] a landowner generally has no duty to warn of hazards that are open and obvious or *known to the invitee*." ) (emphasis added).

Accordingly, under *Austin*'s general rule, Defendant had no duty to warn or make safe the dangerous conditions because Plaintiff knew of the condition.

### 2. The "necessary-use" exception does not apply.

Plaintiff alternatively argues that, even if the dangerous conditions were obvious to Plaintiff, the necessary-use doctrine applies. In *Austin*, the Texas Supreme Court concluded there is an exception[3] to the general rule when: "(1) it was necessary that the invitee use the unreasonably dangerous premises and (2) the landowner should have anticipated that the invitee was unable to avoid the unreasonable risks despite the invitee's awareness of them." *Austin*, 465 S.W.3d at 207.

Here, Plaintiff argues "the evidence shows Plaintiff was specifically instructed and required . . . to use the southern entrance of the building that lacked a light switch." Pl.'s Resp. at 21. And "Plaintiff was forced to cross through the darkness." *Id.* As a result, Plaintiff could not see the pooled water on the painted concrete floor and thus was unable to avoid slipping and falling.

But the record contains no material evidence that Plaintiff was required to enter through the side door without a light switch. In fact, Plaintiff repeatedly admitted he *was allowed* to enter through the main front door and access the work bays via the doorway with the light switch:

> Q. So if you wanted to, you were allowed to walk through the front door of the United Rentals facility in Canyon, Texas, walk to Art Silva's office and then also walk to your bay. If you wanted to enter through the front door, you could?
>
> A. Yes.[4]
>
> *        *        *
>
> Q. There was never any other day that you entered work through the — the main door at the front of the facility?
>
> A. Sometimes I would.
>
> Q. I mean, you were allowed –

---

[3] There is another exception to the general rule, the "criminal activity exception," that does not apply in this case.
[4] Pl.'s Depo., 167:9–167:15.

A. Some -- *I was allowed to*, but I always worked back here.

Q. Right.[5]

                        *     *     *

Q. You're just saying that on every single time you showed up to work, you walked in the side door, or you're saying the majority of the time you showed up to work, you walked in to the side door?

A. When –

Q. Which is it?

A. *Most* of the time, it was through this [side] door.[6]

                        *     *     *

Q. And do you have one or more keys to the facility at the time you worked there?

A. Two.

Q. One of the keys works the front door of the facility where the front room and the offices of Art Silva and Justin are located, correct?

A. Yes.

Q. And one of the keys opens the side door, which enters directly into your – one of your bays?

A. Yes.[7]

Because Plaintiff could have avoided the dangerous conditions in the dark work bay by simply walking through the main door, as Plaintiff admitted he was allowed to do, the necessary-use exception does not apply. Accordingly, Defendant is entitled to summary judgment on

---

[5] Pl.'s Depo., 166:7–166:14 (emphasis added)
[6] Pl.'s Depo., 167:16–167:24 (emphasis added).
[7] Pl.'s Depo., 82:6–82:15.

Plaintiff's premises liability claims because, under the rule announced in *Austin*, Defendant owed no duties to Plaintiff as a matter of law.[8]

### B. Plaintiff's Safe Workplace Claims — Contentions (a), (e), (g), and (h)

An employer has a non-delegable and continuing duty to provide its employees a safe workplace. *Advance Tire & Wheels*, 527 S.W.3d at 480–81; *Austin*, 465 S.W.3d at 201. Under this umbrella, Texas courts have stated an employer has the duty to hire competent co-employees, to provide safety regulations, to provide needed safety equipment or assistance, to warn employees of the hazards of their employment, to supervise them, and to furnish reasonably safe instrumentalities with which employees are to work. *See General Electric Co. v. Moritz*, 257 S.W.3d 211, 215 n. 15 (Tex. 2008) (collecting cases); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam) (duty to warn employees of hazards of employment and duty to provide safety equipment or assistance).

Plaintiff has alleged Defendant breached these duties by (1) failing to provide the necessary instrumentalities to safely encounter and remove the water on the floor of the work bay and (2) by failing to provide training, supervision, policies, and procedures to Plaintiff. ECF No. 98 at 12, 15.

---

[8] Plaintiff cites to five depositions excerpts to support his claim that he was required to enter through the side door. ECF No. 98 at 13 n. 29 (citing Pl.'s Depo., 163:11-16; 164:2-18; 165:11-18; 167:1-8; 171:7-25). But the first two citations only pertain to Plaintiff's assigned parking spot. The third citation only asks if the side door is the door appearing in a certain photographic exhibit. The fourth citation fails to acknowledge that Plaintiff qualified his answer immediately after. *Id.* 167:9–167:15.

The only citation that conceivably supports Plaintiff's claim is the fifth citation, 171:7–171:25. This portion of the deposition came after a bathroom break which Plaintiff's counsel requested *after* Plaintiff admitted he was allowed to enter the front door. *Id.* 167:9–169:25. Upon return from the sudden break, Plaintiff emphasized that he entered the side door *every single day of his entire employment* as supposedly required by Art Silva. *Id.* 171:17–171:25. This blatant contradiction in his testimony quoted above is akin to a sham affidavit. *Free v. Wal-Mart Louisiana, L.L.C.*, 815 Fed. App'x 765, 766 (5th Cir. 2020) ("[A] nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.") (quoting *Doe ex rel. Doe v. Dall Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)). This is not a case where Defendant is introducing conflicting evidence, which should be properly be presented to a jury. Rather, this is a case where Plaintiff's own evidence wholly contradicts itself without explanation.

The Court finds Plaintiff's testimony is so inconsistent that no reasonable juror could accept it. Accordingly, that testimony will not be credited as raising a *genuine* issue of material fact to overcome Defendant's summary-judgment motion.

*1. Defendant provided the necessary instrumentalities.*

To succeed on a claim for failure to provide necessary equipment and instrumentalities, the employee must show that the employer failed to provide instrumentalities to the employee that were necessary for the safe performance of the employee's work. *Austin*, 864 F.3d at 332. But, if there is no evidence that additional equipment was needed for the job to be performed safely, a duty does not arise. *Elwood*, 197 S.W.3d at 795 ("[An employer] has no duty to provide equipment or assistance that is unnecessary to the job's safe performance.").

Plaintiff alleges Defendant failed to "provide adequate lighting and flooring equipment to ensure Plaintiff had a safe workplace." ECF No. 98 at 13. The Court disagrees and finds that Defendant, as a matter of law, provided the necessary instrumentalities.

Throughout Plaintiff's employment, he was provided equipment to clean up water and other spills including: a squeegee to push water and other substances out of the bay, a product called "Floor-Dry," a pair of slip resistant boots, and a mop and bucket. Silva's Depo., 34:2-34:11, 62:3-62:14; Pl.'s Depo., 146:13-147:25. Plaintiff was accustomed to using these tools as he would clean up spills in his work bay about once a week. Pl.'s Depo., 146:22–147:6. And, according to Plaintiff himself, this equipment was sufficient to safely remove any water in the bay, provided that the lights were on. *Id.* 153:9–154:21. Importantly, all this equipment was available to Plaintiff on the day of his injury.

Regarding lighting in the bay, Plaintiff knew where the light switch was located and possessed the ability to access his work bay through the main door. *Id.* 82:6–82:24, 166:3–167:15. If he had done so, Plaintiff could have avoided walking through the dark in the work bays.

Instead, Plaintiff voluntarily chose to enter through the side door. In doing so, Plaintiff knew he was entering a dark room despite the fact that he had a key that would allow him to enter

the work bay that morning through the door where he knew the light switch was located. *Id.* 66:13–66:24, 68:2–68:12, 81:17–81:22, 82:6–82:24, 166:3–167:15. Accordingly, Plaintiff was provided with the necessary instrumentalities — adequate lighting and flooring equipment — to safely encounter and remove any water on the floor of the work bay. Defendant had no duty provide any additional equipment or assistance to Plaintiff.

> 2. *Defendant had no duty to provide Plaintiff with additional training, supervision, and had no duty adopt additional safety rules and procedures.*

Plaintiff also brings claims for "(1) negligent training, (2) negligent supervision, and (3) negligence in enforcing additional safety policies and regulations." ECF No. 98 at 15.

Regarding negligent training, under Texas law, "[t]o establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Parker v. Home Depo USA, Inc.*, No. H-19-706, 2020 WL 6728899, at *5 (S.D. Tex Nov. 16, 2020) (quoting *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex.App.—Fort Worth 2008, no pet.)). "[A]n employer's duty to instruct applies to an inexperienced employee, but not to one who is experienced in the work he is assigned." *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 661 (Tex.App.—Dallas 2005, pet denied.). Moreover, "[t]he age and experience of the employee should be considered in measuring the duty of the employer." *Id.* at 660.

Here, Plaintiff had over twenty-five years of experience as a mechanic, had received prior training on his job duties, and had earned several certifications in his profession as a mechanic and field technician. Pl.'s Depo., 93:1–94:19. Given this experience as a field technician and mechanic, United Rentals had no duty to provide Plaintiff additional training on his job duties. Specifically, Plaintiff has provided no evidence to show that he needed additional training or supervision on how to walk through his bay or how to clean up spills.

Plaintiff also argues that if Mr. Silva had been properly trained then Mr. Silva would have reported the previous water leaks to Mr. Ortegon, the district manager. And he, in turn, could have repaired the sectional garage doors on the southern wall of the work bays. But this is merely an alternative way of arguing premises liability which this Court already has rejected above. *See Austin*, 465 S.W.3d at 215 ("[W]hen a claim does not result from *contemporaneous* activity, the invitee has no negligent-activity claim, and his claim sounds exclusively in premises-liability.") (emphasis added).

Regarding negligent supervision, "[t]o establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees *caused* his injuries." *Parker*, 2020 WL 6728899, at *5 (emphasis added).

Plaintiff argues that if he was properly supervised, then someone would have told him it was dangerous to walk through a dark room. ECF No. 98 at 17. But that is just a different way to say that Defendant failed to warn him of an unreasonably dangerous condition, which is a claim that sounds in *premises liability*. And the Court has explained above why that claim has failed.

Regarding safety policies and regulations, "an employer has *no* duty to adopt safety rules and regulations where its business is neither complex nor hazardous or where the dangers are obvious to the employee." *Nat'l Conv. Stores Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (emphasis added).

Here, Plaintiff has not presented any evidence that his job duties were complex or hazardous. And even if they were, walking through a dark room on a rainy day when water is known to leak into the work bays was a hazard that was actually known by Plaintiff. *Elwood*, 197 S.W.3d at 794. Therefore, United Rentals did not have a duty to implement and enforce additional safety rules and regulations specific to Plaintiff's actions on the day he slipped.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 95) and **DISMISSES WITH PREJUDICE** Plaintiff's case in its entirety.

**SO ORDERED**.

July 16, 2021.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE